**Valerie PROFFIT, Plaintiff,**

v.

**KEYCOM ELECTRONIC PUBLISHING, Defendant.**

**No. 85 C 3299.**

United States District Court, N.D. Illinois, E.D.

Dec. 11, 1985.

On Motion to Reconsider Jan. 31, 1986.

Ronald B. Schwartz, Chicago, Ill., for plaintiff.

Claudia J. Lovelette, Mark A. Stang, Burke, Bosselman & Weaver, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Valerie Proffit ("Proffit") sues Keycom Electronic Publishing ("Keycom"), charging race-motivated employment discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e–17.[1] Keycom has moved under Fed.R.Civ.P. ("Rule") 12(b)(6)[2] to dismiss three of Proffit's claims. For the reasons stated in this memorandum opinion and order, Keycom's motion (converted to one under Rule 56[3]) is granted.

### Facts[4]

In October 1982 Proffit, a black female, began working for Keycom as a depart-

---

1. All further citations to Title VII will simply take the form "Section—." Regulations drawn from 29 C.F.R. will be cited "Reg. § —."

2. Keycom Mem. 1 originally invoked Rule 12(b)(1) to seek dismissal for lack of subject matter jurisdiction. But Keycom focuses on Title VII's requirement that a timely charge be filed with the Equal Employment Opportunity Commission ("EEOC"). *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393–98, 102 S.Ct. 1127, 1132–35, 71 L.Ed.2d 234 (1982) teaches that requirement functions as a statute of limitations rather than as a jurisdictional barrier. Thus Keycom's motion should more properly have been labeled a Rule 12(b)(6) motion to

dismiss for failure to state a claim (and Keycom R.Mem. 1 n. 1 so acknowledges).

3. Keycom's motion submitted materials external to the Complaint, and Proffit responded in kind. As is permitted (though not required) by the last sentence of Rule 12(b), this opinion treats Keycom's motion as one for partial summary judgment under Rule 56.

4. Both parties' evidentiary submissions (see n. 3) address only Proffit's compliance or noncompliance with Title VII's administrative filing requirements, not with the substantive merits of her claims. As to the latter, this opinion takes the Rule 12(b)(6) approach of accepting the Complaint's allegations as true. Needless to

mental assistant. She points to several occurrences over the following two-year period as racially discriminatory:

1. In August 1983 Keycom's Vice President Bob Taller ("Taller") began recruiting an executive assistant. Although Taller promised to interview Proffit for that position, he never did so. Eventually Taller hired a white executive assistant.

2. In April 1984 Keycom sent a white departmental assistant to a trade show but did not send Proffit.

3. In May 1984 Bob Burk interviewed Proffit for a higher position, but he promoted a white worker to that spot.

4. In July 1984 Taller again began recruiting an executive assistant. This time Taller did interview Proffit, but he hired a white worker with less seniority than Proffit to fill the position.

On October 5, 1984 Keycom fired Proffit.

Proffit complained to the relevant federal and state agencies on two separate occasions. On June 8, 1984 she filed a charge ("Charge I," D.Ex. B) with both the Illinois Department of Human Rights ("IDHR") and EEOC, claiming Keycom had denied her promotion because of her race beginning in February 1984. Nearly a year later (on May 15, 1985) Proffit submitted an "Intake Questionnaire" (P.Ex. A) to EEOC, saying Keycom had discharged her in retaliation for filing Charge I. Two weeks later EEOC sent Proffit a proposed draft of a formal charge document encompassing that retaliation claim, asking that she sign and return the charge if it was satisfactory. Nearly 2½ months passed without any action by Proffit. Then on August 11 she signed the charge ("Charge II," P.Ex. C) and filed it with EEOC. In turn EEOC proceeded on August 22 in accordance with the applicable regulation (Reg. § 1601.-14(a)):

1. Pursuant to the well-known sharing agreement between the state and federal agencies, EEOC transmitted a copy of Charge II to IDHR (D.Ex. D).

2. EEOC also sent a copy of Charge II to Keycom (D.Ex. E).

### Timeliness and Scope of Proffit's Filings

Keycom advances three arguments to limit Proffit's claims in this action:

1. Though Keycom's allegedly retaliatory discharge occurred on October 5, 1984, Proffit neglected to file a charge with EEOC until August 11, 1985—310 days later. That filing failed to comply with Title VII's time limits under Section 2000e–5(e).

2. Neither Charge I nor Charge II spoke of the allegedly discriminatory refusal to send Proffit to a trade show in April 1984.

3. Charge I contains no claim that Keycom discriminatorily denied Proffit an interview for possible promotion in August 1983.

Those asserted flaws will be dealt with in turn.

### 1. Proffit's Retaliatory Discharge Claim

■ Section 2000e–5(e) provides a complainant must file a discrimination charge with EEOC:

1. within 180 days, or

2. in deferral states—states that have established their own agencies to remedy discrimination claims [5]—within 300 days,

after the alleged discriminatory act. Absent special circumstances (not asserted here), no plaintiff who fails to file a timely charge with EEOC can maintain a Title VII suit. *Martinez v. United Automobile, Aerospace & Agricultural Implement Workers of America, Local 1373*, 772 F.2d 348, 350 (7th Cir.1985).

Proffit waited until August 11, 1985—310 days after her October 5, 1984 discharge—to file a formal charge with EEOC. That formal charge fell outside the 300-day limitation period prescribed by Section 2000e–5(e). Keycom says Proffit con-

---

say, no actual findings of fact are made or implied by that procedure.

5. Illinois is a deferral state. *See* Reg. § 1601.-74(a).

sequently cannot include a claim for retaliatory discharge in this Title VII action.

Proffit retorts the Intake Questionnaire she submitted May 15, 1985—222 days after her discharge—constitutes a sufficient "charge" under Section 2000e–5(e) and thus satisfies the 300-day filing requirement. Keycom counters with two contentions:

1. Under EEOC's regulations and for its own purposes, an Intake Questionnaire is not treated as a "charge."

2. Even if the Intake Questionnaire *were* viewed as a "charge," Proffit's failure to file it with IDHR within 180 days bars a Title VII suit based on the allegedly retaliatory discharge.

Both positions have merit, as the ensuing discussion shows.

*(a) Intake Questionnaire*

Section 2000e–5(b) provides in part:

Charges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires.

Reg. § 1601.12(b) establishes the minimum requirements for the contents of a charge:

Notwithstanding the provisions of paragraph (a) of this section [outlining the required contents of a charge], a charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of.

Proffit's Intake Questionnaire clearly contained enough information to satisfy Reg. § 1601.12(b): It identified Proffit and Keycom as the relevant parties and described the alleged discriminatory act as "Retaliation due to discrimination charges I filed with [I]DHR." Proffit relies on *Casavantes v. California State University, Sacramento,* 732 F.2d 1441 (9th Cir.1984) to argue the Intake Questionnaire's content alone should determine its status as a charge, regardless of any other circumstances surrounding Proffit's failure to file

a timely formal charge. *Casavantes, id.* at 1443 did indeed reject the argument—advanced by Keycom in this case—that an Intake Questionnaire simply solicits general information, while only an actual charge formally invokes EEOC's jurisdiction:

We find the University's position overly formalistic. We observe that the same regulation permitting wide latitude in the content of the charge also includes an amendment procedure. . . .

Consequently, while Casavantes's questionnaire was not signed or verified, those deficiencies were cured by amendment when the formal charge document was filed on April 14, 1979. We are thus led to the inescapable conclusion that the completed Intake Questionnaire, in the context of both the amendment procedures and the liberality to be ascribed to the procedural requirements, is sufficient to constitute a charge.

This Court finds *Casavantes* wholly unpersuasive as a rule of decision for this case. It has several serious deficiencies toward that end.

 First, of course, there is the fundamental principle that implementing regulations or administrative procedures cannot override their authorizing statute. And here Section 2000e–5(b) specifically mandates that a charge "shall be in writing under oath or affirmation," though it then gives EEOC the power to prescribe the *informational content* and *form* of the sworn charge. EEOC's Intake Questionnaire (its Form 283) calls for the complainant's signature, but it is *not* (as is the Charge of Discrimination itself, EEOC Form 5) signed under oath. Thus irrespective of EEOC's administrative view of the Intake Questionnaire, it does not satisfy the controlling statutory definition. *Casavantes'* notion of a curative amendment—somehow made retrospective to a date before the complainant filed any charge faithful to the statute's requirement—really bends the statute out of shape (another "hard case" making "bad law"?).[6]

---

**6.** *Casavantes'* "inescapable conclusion" would

be the despair of a logician. Before the regula-

That conclusion—which is really dispositive—is reinforced by EEOC's regulations and the treatment they accord to the Intake Questionnaire, as contrasted with the sworn charge.[7] Reg. § 1601.6 distinguishes between the general submission of information to EEOC and the actual filing of a charge:

> The commission shall receive information concerning alleged violations of Title VII from any person. Where the information discloses that a person is entitled to file a charge with the Commission, the appropriate office shall render assistance in the filing of a charge.

Indeed, the Intake Questionnaire itself (P.Ex. A) states EEOC uses it to determine the existence of "potential charges," to provide "pre-charge counseling" and "to solicit information to enable the Commission to avoid the intake of matters not within its jurisdiction."

It is scarcely surprising that Proffit's Intake Questionnaire did not "initiate ac-

tion" by EEOC. EEOC's "Charge and Complaint Analysis" (P.Ex. D) shows EEOC placed the Intake Questionnaire in a "Suspense File." Reg. §§ 1601.13(a)(5) and 1601.14(a) required EEOC to send to IDHR and to Keycom copies of any *charge* filed by Proffit—and EEOC never forwarded copies of the Intake Questionnaire to anyone. Once Proffit did file a formal charge, however, EEOC did send copies of *that* document to IDHR (D.Ex. D) and to Keycom (D.Ex. E).[8] Hence only Proffit's formal charge triggered action by EEOC—providing further confirmation that EEOC's regulations and its procedures conform to the underlying statute, so that Proffit's unsworn Intake Questionnaire did not stop the limitations clock from running.[9]

In any event, EEOC's May 29 letter—sent the 236th day—clearly told Proffit she should sign and return the formal charge within 30 days.[10] Had Proffit acted

---

tion's amendment procedure can come into play, the document to be amended must itself be a "charge." *Casavantes* thus "proves" that the Intake Questionnaire is a charge by assuming the very proposition sought to be proved. To be sure, the regulation does speak of amending a charge "to cure technical defects or omissions, including failure to verify the charge...." But whatever may be said of treating as only "technical" a non-verification of a document designed and labeled as a charge, it truly strains the language to accord the same treatment to a document that is *not* so designed and specifically does not contemplate its own verification.

7. See *Moore v. Sunbeam Corp.*, 459 F.2d 811, 822 (7th Cir.1972) (emphasis added), where our Court of Appeals rejected plaintiff's argument that a letter he sent to EEOC constituted a filed charge:

> [W]e would not regard that type of communication as an adequate filing of the charge which is intended to initiate action by the EEOC. The letter was not addressed to the Commission, it did not request the EEOC to take any action, and if indeed a copy was received by the EEOC, *it was not interpreted by that agency as a charge.*

8. It is worth remembering that *Zipes*, while rejecting the filing of a charge as a jurisdictional bar, specifically sustained the requirement as a statute of limitations. One of the purposes of every statute of limitations is timely notice to the adverse party—to prescribe a rule for retention of records, to permit investigation while

memories are still relatively fresh and so on. Hence it is not surprising that EEOC's regulations require prompt transmittal of every charge to the employer. That purpose is disserved by treating an internal EEOC document, which never sees the light of day, as a timely charge. Understandably the regulations do not do so, and this Court will not either.

9. Proffit tries to avert the impact of the statute and regulations by an affidavit from an EEOC Unit Supervisor, Frank Keller:

> 1. characterizing the Intake Questionnaire as a "sufficient charge" filed May 15;
> 2. characterizing that "charge" as having been "perfected" August 14 by the "signed and sworn charge on EEOC Form 5"; and
> 3. labeling the failure to notify both Keycom and IDHR of the asserted May 15 "charge," instead sending those notices within ten days after the August 14 date, as having been done "[t]hrough inadvertence."

In all candor, that has a somewhat disingenuous ring—especially when the asserted "inadvertence" actually conformed to EEOC's own regulations. But even if the affidavit is accepted at face value, internal office procedures cannot override the statute and regulations that constitute the bible to whose commandments an agency must conform.

10. By contrast, the *Casavantes* plaintiff did not even receive a letter from EEOC until well after the 300-day period had ended. However, he did

promptly, she would have filed her charge no later than the 266th day—well within the 300-day period. Proffit offers no explanation of why she waited almost three months to file the formal charge. In light of Proffit's unexplained delay, this Court sees no reason to stretch the meaning of a "charge" to include an Intake Questionnaire.

*(b) Failure To Make a Timely Filing with IDHR*

Section 2000e–5(e) sets up a dual timetable for the filing of charges. Though it first speaks of a 180-day limitation, it goes on to establish an extended filing period in "deferral states"—such as Illinois—that have a state agency competent to grant relief for employment discrimination:

> [I]n a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred....

What Keycom focuses on in that respect is Proffit's need to have "initially instituted proceedings" with IDHR—a prerequisite to her ability to invoke a 300-day calendar for EEOC filing.[11] Keycom argues Proffit's failure to file the Intake Questionnaire with IDHR within 180 days of her termination (the time required by state law) bars any Title VII suit based on that termination, even if the Intake Questionnaire were considered a proper "charge."

In fact Proffit never filed the Intake Questionnaire with IDHR. But this Court has consistently held the filing of a charge with EEOC automatically satisfies the

state filing requirement as well. Judge Aspen's opinion in *Zewde v. Elgin Community College,* 601 F.Supp. 1237, 1240–41 (N.D.Ill.1984) (citations omitted) states the reason succinctly:

> It is well established that a layperson will not be punished for filing with the "wrong" agency first. Since Illinois is a "deferral" state, if the EEOC happens to receive the charges first, it may institute state administrative proceedings on behalf of the complainant by referring the charges to the state agency.... EEOC regulations require the EEOC to refer charges automatically to the relevant state agency. 29 C.F.R. § 1601.13 (1983). Accordingly, we hold that Zewde instituted state proceedings by filing his charge with the EEOC, and we therefore deny Elgin's motion to dismiss on that theory.

Even so, and even if Proffit's Intake Questionnaire (filed 222 days after her discharge) were viewed as having been (1) the equivalent of a "charge" and (2) filed with IDHR, Proffit *still* did not meet Illinois' 180-day limitation period.[12] Keycom therefore urges that even with the benefit of the most favorable assumptions, Proffit's failure to initiate timely state proceedings precludes application of Title VII's extended 300-day filing period.

No Supreme Court decision has directly addressed that issue. *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 753, 99 S.Ct. 2066, 2070, 60 L.Ed.2d 609 (1979) considered the parallel requirement in the Age Discrimination in Employment Act ("ADEA," 29 U.S.C. §§ 621–634) and concluded:

> [T]he grievant is not required by § 14(b) [the ADEA provision] to commence the state proceedings within time limits specified by state law.

Our Court of Appeals has recently concluded *Oscar Mayer* compelled "[t]he rule that the timeliness of [an ADEA] plaintiff's

---

11. Whether Proffit did so is critical because even if May 15, 1985 *were* accepted as the EEOC charge date, it would be more than 180 days—

return a signed charge to EEOC three days after he received it. 732 F.2d at 1442.

though less than 300 days—after Proffit was fired.

12. Ill.Rev.Stat. ch. 68, § 7–102(A)(1).

state charge is irrelevant to whether he gets the extended 300-day federal charge-filing period...." *Anderson v. Illinois Tool Works, Inc.*, 753 F.2d 622, 626 (7th Cir.1985).

*Anderson, id.* at 627 also suggested in dictum the same rule applies in Title VII actions. It adverted to *Mohasco Corp. v. Silver*, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980), where (in the course of holding a submission to EEOC before initiation of state proceedings did not constitute a "filing" with EEOC) the Supreme Court said (*id.* at 814 n. 16, 100 S.Ct. at 2491 n. 16):

[A] complainant in a deferral State having a fair employment practices agency over one year old need only file his charge within 240 days of the alleged discriminatory employment practice in order to insure that his federal rights will be preserved.

*Anderson*, 753 F.2d at 627 commented:

Presumably, if the Court thought that the complainant was also required to file a timely state charge it would have said so, or at least not said that filing within 240 days was all the complainant was required to do.

Even more recently, however, our Court of Appeals has made plain the issue remains an open one despite the *Anderson* dictum. It held in *Martinez*, 772 F.2d at 352:

[I]n a state that has an administrative statute of limitations shorter than 180 days, a timely filing is not required to preserve one's federal rights.

But *Martinez, id.* at 351–52 also said a distinction might well be drawn between states whose statute of limitations is shorter than the federal 180-day period (as in *Martinez*) and states with a filing period of 180 days or longer (such as Illinois). Three considerations have led this Court to find such a distinction *is* appropriate (despite its rejection in several other circuits).

First, *Anderson's* dictum has really read too much into the earlier-quoted *Mohasco* footnote. *Lowell v. Glidden-Durkee, Division of SCM Corp.*, 529 F.Supp. 17, 21–22 (N.D.Ill.1981) (emphasis in original) tells why that footnote did not really speak to an untimely filing in a deferral state such as Illinois:

First ... Lowell's case differs from Mohasco in one crucial respect. In *Mohasco*, the plaintiff had initiated state proceedings *within* the state limitation period, which was one year. The Court did not decide whether failure to file within the state period could preclude application of the extended federal filing period. Furthermore, in the footnote cited, the Court was rejecting a line of cases that held that a claimant must file with the state agency within 180 days *in every case* in order to claim the extended filing period. The Court stated that this rule was too restrictive because it did not take into account deferral states that had a filing period *longer* than 180 days. In such cases, a claimant could file with the state more than 180 days after the injury complained of and still be within the state limitation period. As long as the claimant filed with the EEOC before 300 days had passed, the charge would be timely. But the footnote did not address the present case, where the state limitation period was equal to the federal, and plaintiff failed to file a timely charge with the state.

Second, Title VII reflects a far more meaningful policy of deferral to state agencies than the purely token state-filing provision of ADEA. Section 2000e–5(c) requires a complainant in a deferral state to give the state 60 days to consider his or her claim before he or she files with EEOC. ADEA confers no such 60-day period of exclusive jurisdiction on the states (*Oscar Mayer* makes it clear, as does a mere reading of ADEA, that no substantive significance at all attaches to the ADEA claimant's state filing). Hence the pursuit of a federal ADEA remedy despite an untimely state filing involves no encroachment on any deferral policy. In sharp contrast (and as *Martinez*, 772 F.2d at 350–51 suggested), if a Title VII plaintiff were allowed to evade state procedures while pursuing his

or her federal remedy, that would fly in the face of the purpose behind the extended filing period in deferral states. As *Lowell,* 529 F.Supp. at 22 put it:

> The argument that a claimant becomes entitled to the extended filing period, which is designed to allow plaintiffs to exhaust their state remedies without jeopardizing their federal rights, merely because she filed a meaningless, time-barred charge with the state agency strikes this Court as illogical. To so hold would be to reduce the state filing to a procedural sham.

Third, *Mohasco,* 447 U.S. at 821, 100 S.Ct. at 2494 (quoting *Moore,* 459 F.2d at 825 n. 35) itself pointed out:

> But neither [Title VII] nor anything else in the legislative history contains any "suggestion that complainants in some States were to be allowed to proceed with less diligence than those in other states."

In those terms, to allow a plaintiff to obtain the benefit of the extended 300-day federal filing period without complying with a state's 180-day filing period would indeed enable deferral-state plaintiffs to "proceed with less diligence" than claimants in non-deferral states. That would frustrate Congress' entire purpose by permitting a total sidestepping of the state process that gave rise to Title VII's extended filing time in the first instance.

This entire line of analysis finds direct support in the statutory language as well. Section 2000e–5(e) provides the 300-day extended filing period applies:

> in a case ... [where] the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice....

As *O'Young v. Hobart Corp.,* 579 F.Supp. 418, 421 (N.D.Ill.1983) (citation omitted) says:

> Strictly speaking, where the claimant files a time-barred claim with the state agency, the agency is not an agency authorized to grant or seek relief with respect to that complaint.... Consequently, plaintiff is not entitled to the benefit of the extended 300 day filing period.

In sum, this Court concludes Proffit's Intake Questionnaire—even if it were read as a "charge"—could not support a lawsuit covering its claim (one for retaliatory discharge) because Proffit failed to file the Questionnaire within 180 days. Even indulging the fiction that "filing" the Questionnaire with EEOC was also a state filing (despite EEOC's nontransmission of the document to IDHR), the untimeliness of that "filing" precluded state review. No justification exists for allowing Proffit to benefit from an extended filing period, where a grievant in a non-deferral state would have forfeited his or her federal rights by not acting within 180 days.[13]

### 2. April 1984 Trade Show

Proffit also alleges Keycom discriminatorily refused to send her to a trade show in April 1984. Keycom responds that Proffit's failure to have included that claim in either of her EEOC charges bars a Title VII suit based on that claim.

*Babrocky v. Jewel Food Co.,* 773 F.2d 857, 864 (7th Cir.1985) (quoting *Jenkins v. Blue Cross Mutual Hospital Insurance, Inc.,* 538 F.2d 164, 167 (7th Cir.1976)) (citations omitted) states the applicable test:

> All claims of discrimination are cognizable that are " 'like or reasonably related to the allegations of the charge and growing out of such allegations.' " ... The standard is a liberal one in order to

---

**13.** True enough, Reg. § 1601.13 says otherwise: (3) Charges arising in jurisdictions having a 706 Agency but which charges are apparently untimely under the applicable state or local statute of limitations are filed with the Commission upon receipt. Such charges are timely filed if received by the Commission within 300 days from the date of the alleged viola-

tion. Copies of all such charges will be forwarded to the appropriate 706 Agency.

Although administrative regulations are entitled to consideration as an *aid* to statutory construction, they must be rejected where (as here) they are *inconsistent* with the statute. *Mohasco,* 447 U.S. at 825, 100 S.Ct. at 2496.

effectuate the remedial purposes of Title VII, which itself depends on lay persons, often unschooled, to enforce its provisions.

Proffit's trade show claim does not meet that test.

■ Proffit's June 1984 EEOC charge focused solely on discrimination in Keycom's promotion policies. That might reasonably also embrace discrimination in transfer policies and perhaps even in salaries. But a claim that Keycom sent a white worker rather than Proffit to a trade show is not "closely linked" (*Babrocky*, 773 F.2d at 865) to a charge of discriminatory promotion policies. Proffit does not allege attending the trade show was a step towards promotion. Allegedly discriminatory denial of a job benefit—the opportunity to attend a trade show—does not "relate to" or "grow out of" the claim of discriminatory promotion practices contained in Proffit's Charge I. Hence Proffit's Title VII action cannot include that claim.[14]

### 3. August 1983 Interview

Finally, Proffit also grounds her Title VII action on Taller's allegedly discriminatory refusal to interview Proffit in August 1983. Once again Keycom urges Proffit's failure to include that claim in Charge I bars suit on that incident.

■ As with the trade show incident, Proffit argues the denial of the interview is cognizable under Charge I because the event was "like or reasonably related" to the other allegations of discriminatory promotion practices contained in that charge. *Babrocky*, 773 F.2d at 864. Though that is of course true, the August 1983 interview occurred at least 281 days before Proffit's June 8, 1984 filing of Charge I with IDHR. That places the alleged discrimination outside both Illinois' 180-day filing period and the federal 240-day limit discerned in *Mo-*

*hasco*, 447 U.S. at 814 n. 16, 100 S.Ct. at 2491 n. 16.[15] Proffit cannot use the *Jenkins-Babrocky* "like or reasonably related" standard to work backward in time, thus circumventing the statutory filing deadlines. Carried to its logical extension, her argument would abolish the whole notion of limitations—for any new act of discrimination would dredge up and render actionable every long-outlawed historical occurrence of the same kind.

■ Proffit next argues Keycom engaged in a continuous course of discrimination against her. Hence she claims the August 1983 incident is not time-barred under a "continuing violation" theory.

*Stewart v. CPC International, Inc.*, 679 F.2d 117, 120 (7th Cir.1982) identified the appropriate "continuing violation" theory applicable to discriminatory promotion practices:

In the first situation, "continuing violation" is the term used to describe the rule that a violation of Title VII occurs, and triggers the time limit for filing a charge, when the employee knew or should have known that he or she was discriminated against. This rule is applied in cases, usually involving hiring or promotion practices, where the employer's decision-making process takes place over a period of time, making it difficult to pinpoint the exact day the "violation" occurred.

By definition Proffit knew of the asserted violation in question when Keycom informed her sometime in August 1983 that she would not receive an interview from Taller. That places the discriminatory act well beyond the filing period. Keycom's alleged later failure to promote Proffit to other positions does not transform its earlier discriminatory act into a "continuing" violation. As *Garcia v. Rush Presby-*

---

14. As with the claim next discussed, this holding does not implicate any ruling as to the admissibility of evidence of Keycom's asserted discriminatory conduct—as for example to show its intent, which is of course relevant to the charges that *are* within the scope of Proffit's Title VII action.

15. Illinois did not terminate its proceedings on Charge I until IDHR dismissed that charge at Proffit's request on November 16, 1984—well over 300 days after the August 1983 event (D.Ex. G).

*terian-St. Luke's Medical Center*, 80 F.R.D. 254, 262 (N.D.Ill.1978) properly held:

> Thus, while acts which were not the basis of the EEOC charges may be relevant as background [for] the timely claims, they may not themselves constitute the basis for imposition of liability.

Accordingly Proffit cannot rely on the August 1983 refusal to interview her as a separate claim in this Title VII action.

### *Conclusion*

There is no genuine issue of material fact, and Keycom is entitled to a judgment as a matter of law, as to the three assertedly discriminatory acts that are the subject of its current motion. Proffit's claims based on those acts are dismissed from this action.

### ON MOTION TO RECONSIDER

This Court's December 11, 1985 memorandum opinion and order (the "Opinion") dismissed three of Proffit's claims grounded in Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e–17.[1] Now Proffit has filed a motion requesting this Court to reconsider its dismissal of Proffit's retaliatory discharge claim.[2] Although Profitt's objections certainly merit brief discussion, they do not call for modification of the Opinion.

Proffit urges reconsideration because, she claims:

1. This Court's treatment of Section 2000e–5(b)'s "oath or affirmation" requirement fell "outside the adversarial issues presented to the Court by the parties."

2. Our Court of Appeals' decision in *Choate v. Caterpillar Tractor Co.*, 402

F.2d 357 (7th Cir.1968) dispensed with the "oath or affirmation" requirement. Neither of those contentions is persuasive.

■ *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va.1983) tells why motions for reconsideration—not provided for specifically anywhere in the Federal Rules of Civil Procedure—are seldom appropriate. One of the limited functions for such a motion, recognized in *Above the Belt*, is to deal with the situation where "the Court ... has made a decision outside the adversarial issues presented to the Court by the parties." But Proffit is a bit less than candid in suggesting this Court introduced the verification issue. Proffit's memoranda on the original motion[3] explicitly placed substantial reliance on *Casavantes v. California State University, Sacramento*, 732 F.2d 1441 (9th Cir.1984) to argue the Intake Questionnaire constitutes a sufficient "charge" under Section 2000e–5(e). And the real gravamen of *Casavantes'* conclusion to that effect (*id.* at 1443) was that Section 2000e–5(b)'s verification requirement should not impair the Intake Questionnaire's sufficiency as a "charge." It was of course necessary for this Court, in dealing with *Casavantes'* analytical underpinnings (and deciding not to follow that case under the circumstances here), to address the verification issue.

Proffit next cites *Choate*—not previously cited to this Court—to argue this Court cannot use Section 2000e–5(b)'s "oath or affirmation" mandate to conclude her Intake Questionnaire did not constitute a formal charge. *Choate*, 402 F.2d at 359 did indeed refuse to insist on strict compliance with the "under oath" requirement:

> We are of the view that the district court was in error in holding that its jurisdiction to entertain the suit depended upon whether the charge of discrimination filed with the Commission was under

---

1. All further citations to Title VII will simply take the form "Section—." Regulations drawn from 29 C.F.R. will be cited "Reg. §—."

2. This opinion will assume familiarity with the Opinion. It will not repeat either the Opinion's

factual statement or its substantive analysis, except to the extent required for current discussion.

3. Proffit Mem. at 3 and Proffit Supp. Mem. at 2.

oath. Basic to our view is the fact that the "under oath" requirement relates to the administrative procedures which are conducted by the Commission and which precede any court action. The statute gives the Commission no enforcement powers through the adjudicatory process. It allows the Commission only to investigate charges and attempt to gain compliance by informal methods of conference, conciliation, and persuasion. Enforcement of the rights of aggrieved parties resides exclusively in the federal courts. When the statute is thus considered, it is clear that the requirement for verification of charges lodged with the Commission relates solely to the administrative rather than to the judicial features of the statute. We believe that the provision is directory and technical rather than mandatory and substantive.

However, Proffit's reliance on *Choate* is misplaced for several reasons.

First, the Seventh Circuit decided *Choate* at a time when most courts viewed Title VII's time limitations as a jurisdictional prerequisite to the commencement of a civil suit in federal court. Our Court of Appeals' decision in *Choate* to treat the lack of an "oath or affirmation" as a mere technical defect really stemmed from two considerations:

1. EEOC had itself requested the plaintiff to swear orally to the truth of her charges. Hence the absence of a timely charge verified in writing stemmed from EEOC's actions—not the plaintiff's (402 F.2d at 359).

2. Because most courts considered the absence of a timely written charge a jurisdictional defect, an unwary plaintiff could not invoke any equitable considerations and would suffer innocently for EEOC's oversights (see the related discussion on another timing issue, *id.* at 361).

*Zipes v. TWA*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982) (footnote omitted) has since corrected the lower courts' earlier treatment of untimely filing with EEOC as a jurisdictional flaw:

> We hold that filing a timely charge of discrimination with the EEOC is not a jurisidictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.

Thus, unlike the plaintiff in *Choate*, Proffit *can* invoke equitable doctrines of waiver, estoppel and equitable tolling to bolster her claim an unverified Intake Questionnaire can constitute a charge. But the Opinion, 625 F.Supp. at 404–05 has already exposed the reason Proffit has no call on the equitable conscience:

> In any event, EEOC's May 29 letter—sent the 236th day—clearly told Proffit she should sign and return the formal charge within 30 days.[4] Had Proffit acted promptly, she would have filed her charge no later than the 266th day—well within the 300-day period. Proffit offers no explanation of why she waited almost three months to file the formal charge. In light of Proffit's unexplained delay, this Court sees no reason to stretch the meaning of a "charge" to include an Intake Questionnaire.

It is also worth noting that *Choate* dealt with the original language of Title VII (Pub.L. No. 88–352, Title VII, § 706(a), 78 Stat. 253, 259 (1964)):

> Whenever it is charged in writing under oath by a person claiming to be aggrieved. . . .

That prefatory language was stated as the prelude to EEOC action. Its form was then changed by the 1972 amendments to Title VII to a statutory *mandate:*

> Charges shall be in writing under oath or affirmation and shall contain such infor-

---

**4.** (Footnote in original Opinion.)

By contrast, the *Casvantes* plaintiff did not even receive a letter from EEOC until well after the 300-day period had ended. However, he did return a signed charge to EEOC three days after he received it. 732 F.2d at 1442.

mation and be in such form as the Commission requires.[5]

Indeed Keycom's current responsive memorandum accurately points out (Mem. 1) the oath or affirmation is the *only* requirement the statute actually spells out—everything else about the charge, but *not* that necessary ingredient, is delegated to EEOC to prescribe. Normal principles of statutory construction would dictate it is not open to EEOC also to prescribe the absence of what the statute compels—to waive the one ingredient the statute does *not* leave to EEOC.

Finally, *Choate* itself relied in part on EEOC's own treatment of the unverified complaint in that case as a charge (402 F.2d at 360) (footnote omitted):

> If the Commission undertakes to process a charge which is not "under oath," we perceive no reason why the district court should not treat the omission of the oath as a permissive waiver by the Commission. To deny relief under these circumstances would be a meaningless triumph of form over substance.

But the Opinion, 625 F.Supp. at 404 (footnotes omitted) has already pointed out that was not true of Proffit's Intake Questionnaire:[6]

> It is scarcely surprising that Proffit's Intake Questionnaire did not "initiate action" by EEOC. EEOC's "Charge and Complaint Analysis" (P.Ex. D) shows EEOC placed the Intake Questionnaire in a "Suspense File." Reg. §§ 1601.13(a)(5) and 1601.14(a) required EEOC to send to IDHR and to Keycom copies of any *charge* filed by Proffit—and EEOC never forwarded copies of the Intake Questionnaire to anyone. Once Proffit did file a formal charge, however, EEOC did send copies of *that* document to IDHR (D.Ex. D) and to Keycom (D.Ex. E). Hence only

Proffit's formal charge triggered action by EEOC—providing further confirmation that EEOC's regulations and its procedures conform to the underlying statute, so that Proffit's unsworn Intake Questionnaire did not stop the limitations clock from running.

In sum, Proffit's reliance on *Choate* does not compel reconsideration of the Opinion. This Court adheres to its original decision.

One last (and obvious) point merits brief mention in that respect. Even if this Court *were* to read Proffit's Intake Questionnaire as a "charge" (as it does not), Proffit's failure to file the Questionnaire within 180 days bars her Title VII suit based on the allegedly retaliatory discharge. Because the Opinion also rested on that equally sufficient alternative ground, Proffit's motion for reconsideration could not change the ultimate result.

### Conclusion

Proffit's motion for reconsideration is denied. This Court reaffirms the Opinion.

---

5. Regulation § 1601.9 echoes that requirement: A charge shall be in writing and signed and shall be verified.

6. Proffit's motion to reconsider also asserts:
 [T]he EEOC insists that Mrs. Proffit's Intake Questionnaire constitutes a charge.
 That subject has already been addressed by Opinion, 625 F.Supp. at 404 n. 9. Without extending the discussion unduly, this Court notes

Keycom's current memorandum is also correct in pointing out (Mem. 7) the affidavit on which Proffit relies does not state on affiant Keller's *personal knowledge* (a prerequisite for an admissible evidentiary affidavit) that EEOC's nonmailing of the Intake Questionnaire to Keycom and the state agency was "through inadvertence" (rather than because the Intake Questionnaire was not, and was not really treated by EEOC as, a "charge").