392 So.2d 1353 (1980)
MONOGRAM PRODUCTS, INC., a Florida Corporation, Appellant,
v.
Joseph L. BERKOWITZ, d/b/a J.L. Berkowitz Agency, Gulf Insurance Company, Aetna Insurance Company, Peninsular Fire Insurance Company and Security Insurance Company of Hartford, Appellees.
No. 80-202.
District Court of Appeal of Florida, Second District.
December 24, 1980.
Rehearing Denied January 30, 1981.
*1354 William M. Schneikart of Jacobs, Robbins & Gaynor, St. Petersburg, for appellant.
J. Emory Wood of Harris, Barrett & Dew, St. Petersburg, for appellee Joseph L. Berkowitz.
W. Donald Cox of Fowler, White, Gillen, Boggs, Villareal & Banker, Tampa, for appellees Aetna Ins. Co., Peninsular Fire Ins. Co., Sec. Ins. Co. of Hartford, and Gulf Ins. Co.
SCHEB, Chief Judge.
The trial court awarded summary final judgments holding that the Statute of Frauds barred enforcement of an oral contract concerning insurance and that an insurance agent owed no duty to the insured to provide coverage above the limits of the policies actually issued. We reverse.
Monogram Products, Inc., sued Joseph L. Berowitz, doing business as J.L. Berkowitz Agency, Gulf Insurance Company, Aetna Insurance Company, Peninsular Fire Insurance Company and Security Insurance Company of Hartford. Monogram alleged that the defendants' negligence and breach of an alleged oral contract resulted in inadequate insurance coverage for a fire loss at one of its warehouses.
Monogram alleged that it manufactured, imported and distributed novelty and souvenir merchandise. Since its plans called for importing and storing unusually large quantities of merchandise in early 1977, it leased a second warehouse. Realizing that the value of its inventory at the new warehouse could fluctuate as much as $200,000 in a month, Monogram asked Berkowitz, its regular insurance agent, to procure adequate insurance for the inventory prior to using the warehouse. Monogram alleged that it informed Berkowitz that $100,000 coverage on the inventory in the new warehouse would not be adequate and that due to the fluctuating inventory, coverage would have to be flexible.
In his deposition Charles Burkett, Monogram's president, testified that Berkowitz suggested that Monogram report the amounts of inventory in the two warehouses monthly so that proper premiums could be computed at year's end. Further, Burkett said that Berkowitz suggested that since the initial inventory in the new warehouse would be only $50,000 to $60,000, Monogram should set a limit to coverage of $100,000 for the inventory in that warehouse. According to Burkett, Berkowitz explained that when monthly reports indicated an inventory exceeding that amount, the policies would automatically cover it as long as inventory in both warehouses did not exceed $700,000 in value. Monogram alleged that it entered into an oral contract with Berkowitz to that effect. Berkowitz subsequently procured policies from the defendant insurance companies. The policies, however, limited coverage on the new warehouse to $100,000 without regard to the value of the inventory at both warehouses. Monogram was not aware of this since, claiming that it relied on the representations of Berkowitz, it had not read the policies. This, however, does not bar its claim. Blumberg v. American Fire & Casualty Co., 51 So.2d 182 (Fla. 1951).
On November 26, 1977, fire destroyed Monogram's new warehouse and its inventory valued in excess of $180,000. At that time the inventory in both warehouses was worth less than $700,000. The four insurance companies subsequently honored Monogram's claim only to the extent of $100,000.
Monogram sued to recover the deficit on the theories that Berkowitz had been negligent in failing to maintain adequate insurance coverage for it and had breached the alleged oral contract and was therefore liable. It also alleged that the insurance companies were liable for the actions of Berkowitz as their agent. Each defendant *1355 moved for summary judgment on two grounds: (1) the Statute of Frauds barred enforcement of Monogram's claim because the alleged contract was not in writing and could not be performed in one year as required by section 725.01, Florida Statutes (1979), and (2) Berkowitz had no duty to maintain adequate insurance for Monogram. In their motions Aetna and Peninsular added that even if their agent Berkowitz made the alleged agreement, there was no evidence that he acted as their agent on this occasion; while Gulf and Security contended they were not liable because Berkowitz was not even their agent. The trial court awarded summary final judgments to all defendants on the grounds that Berkowitz had no duty to provide insurance to Monogram over the limits of the policies actually issued, and that the Statute of Frauds barred enforcement of the alleged oral contract. This appeal by Monogram followed.
Initially, we note that the liability of an insurance agent for failure to procure coverage as agreed is recognized in Florida. First National Insurance Agency v. Leesburg Transfer and Storage, Inc., 139 So.2d 476 (Fla.2d DCA 1962). Florida also recognizes both oral contracts to procure insurance and oral contracts of insurance. Hanover Fire Insurance Co. v. Hiers, 79 Fla. 408, 84 So. 605 (1920); State Farm Fire & Casualty Co. v. Hicks, 184 So.2d 685 (Fla.2d DCA 1966); 18 Fla.Jur. Insurance §§ 337-38 (1971); see § 627.401, Fla. Stat. (1979). Hence, the Statute of Frauds applied only if the alleged oral contract could not have been performed within one year. § 725.01, id. Monogram alleged that it and Berkowitz had agreed that Berkowitz would procure insurance coverage immediately. Where, as here, an oral contract is at issue, the Statute of Frauds does not bar enforcement of that contract if the parties intended for it to be performed within one year. First Realty Investment Corp. v. Gallaher, 345 So.2d 1088 (Fla.3d DCA 1977). From the pleadings, affidavits and depositions, it appears that a factual issue existed as to the intent of the parties as to whether coverage should be procured immediately; hence, none of the defendants were entitled to a summary judgment on the basis of the Statute of Frauds.
The defendants also rely on the trial court's holding that Berkowitz had no duty to provide insurance to Monogram over the limits of the policies actually existed. Assuming the existence of the alleged oral contract, Berkowitz owed Monogram the duty to procure insurance as they had agreed. Burns v. Consolidated American Insurance Co., 359 So.2d 1203 (Fla.3d DCA 1978). Therefore, the trial court improperly awarded summary judgment on this ground.
Aetna and Peninsular argue that irrespective of entitlement on the above grounds, the court properly awarded summary final judgment to them because Berkowitz did not act as their agent. We find sufficient evidence to raise a factual issue as to their relationship with Berkowitz, however. Aetna and Peninsular stated in their motions for summary judgment that Berkowitz was their general agent, and, in fact, a written agency agreement existed between Berkowitz and the companies. This indicates that Berkowitz may have been acting as the agent of Aetna and Peninsular. Monogram states that it relied on Berkowitz to obtain proper coverage for its inventory. As Couch states, however, "giving an insurance agent general authority to insure property with discretion to select the company, and to cancel and replace policies, does not make such agent the agent of the insured, and not of the insurer in the issuance of the policy." Couch, Cyclopedia of Insurance Law § 25:100 (1960).
On the other hand there was a history of Monogram relying on Berkowitz to handle its insurance needs. Further, Berkowitz did not specify which companies he would procure insurance through when Monogram requested coverage. Thus, Berkowitz may have been acting as an agent for either the insurance companies or Monogram when he procured the policies. See Karam v. St. Paul Fire & Marine Insurance Co., 265 So.2d 821 (La. App. 1972), aff'd., 201 So.2d 728 *1356 (La. 1973); 16 J.A. Appleman & J. Appleman, Insurance Law and Practice § 8725 (1968); 18 Fla.Jur. Insurance § 316 (1971). Consequently, Aetna and Peninsular failed to conclusively establish that Berkowitz was not acting as their agent in this instance, and the awards of summary judgment cannot be sustained on that ground.
Gulf and Security stand in a different relationship to Berkowitz than Aetna and Peninsular. They reassert, as they did in the trial court, that Berkowitz was not their agent but merely brokered the insurance contracts with them through another insurance agency. Monogram did not refute their showing that they had no contractual relationship with Berkowitz. Further, Monogram did not establish the factual issue of ratification in the trial court, as it now attempts to assert on appeal. Therefore, the trial court properly awarded summary final judgments to Gulf and Security.
Accordingly, we reverse the summary judgments awarded to Berkowitz, Aetna and Peninsular; we affirm the summary judgments in favor of Gulf and Security. We remand for further proceedings consistent with this opinion.
GRIMES and CAMPBELL, JJ., concur.