**GUST K. NEWBERG CONSTRUCTION COMPANY, an Illinois Corporation, Plaintiff-Appellant,**

v.

**E.H. CRUMP & COMPANY, a Delaware Corporation, Defendant-Appellee.**

No. 86–1681.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 24, 1986.

Decided May 15, 1987.

Rehearing Denied June 18, 1987.

Edward M. White, Carey, Filter, White & Boland, Chicago, Ill., for plaintiff-appellant.

Don W. Fowler, Lord, Bissell & Brook, Chicago, Ill., for defendant-appellee.

Before WOOD and POSNER, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

Gust K. Newberg Construction Company ("Newberg"), the plaintiff in this case, appeals from a judgment entered in favor of the defendant, E.H. Crump & Company ("Crump") following a bench trial. In this diversity action, the district court held that Crump had no duty, under Florida law,[1] to

---

1. Newberg contended in the district court that Florida law governed this action because the risk to be insured was a Florida risk and the policy was delivered in Florida. Tr. 277. The district court accepted this contention, noting that Illinois conflicts law, which it was obliged to apply under *Klaxon v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), called for application of the "most significant contacts" test, giving presumptive importance to the place of the injury. Slip op. at 11 (citing *R & L Grain Co. v. Chicago Eastern Corp.*, 531 F.Supp. 201, 204–05 (N.D.Ill.

1981) and *DP Service, Inc. v. AM International*, 508 F.Supp. 162, 165 (N.D.Ill.1981)). As neither party has seriously challenged the district court's holding on the conflict question, we need not decide whether it was correct. We note however, that the question is not free from doubt, as the injury was the failure to procure adequate insurance, not the occurrence of the uninsured risk. We leave for another day the question of which forum has the greater interest in regulating the conduct of an insurance broker regarding his customers.

inform Newberg that an "all risk" insurance policy purchased by Newberg to cover its risk of loss regarding a construction project in Dade County, Florida, excluded loss caused by subsurface water. Under the circumstances of this case, we agree and therefore affirm.

I

Newberg, an Illinois corporation with its principal place of business in Illinois, is engaged in the construction business throughout the country. Crump, a Delaware Corporation[2] with its principal place of business in Tennessee, is engaged in the insurance brokerage business. The business relationship of the parties dates back to 1973, when Crump began obtaining bid bonds and performance bonds for Newberg. Some time later, Crump became the exclusive broker for all surety bonds (bid and performance) written for Newberg. Crump has also sometimes acted as a broker to obtain "builder's risk" insurance for Newberg. Crump also sought unsuccessfully to become Newberg's "general comprehensive liability and workmen's compensation" insurance broker.

A word of explanation about the types of insurance commonly carried by construction companies is warranted. Bid and performance bonds and "builder's risk" insurance are typically obtained on a job-specific basis, while the comprehensive liability and workmen's compensation insurance are carried on a continuous basis. "Builder's risk" insurance, the type involved in this lawsuit, is designed to cover the risk of loss that the builder bears under the construction contract in the event certain catastrophes strike the structure to be built.

"Builder's risk" policies are of two types: "specified peril" insurance, which covers only those perils specified in the insurance contract, and "all risk" insurance, which covers all losses except those specifically excluded. In sum, under an "all risk" poli-cy, the insurer bears the risk that a catastrophe not mentioned in the policy will occur; in a "specified peril" policy, the insured bears that risk.

Frequently the construction contract will require the builder (rather than the owner) to obtain "builder's risk" insurance. In such cases, the contract usually specifies which type of insurance is required. If "specified peril" insurance is called for, the perils to be insured against are usually listed. Even though a contract might only call for "specified peril" insurance, however, the builder is always free to obtain better coverage. It was Crump's policy to always recommend "all risk" insurance. It is uncontested that whenever Crump obtained "builder's risk" insurance for Newberg, it was of the "all risk" variety. Additionally, Newberg claimed that its practice was to always require "all risk" insurance and that it informed Crump of this policy at the onset of their relationship. Crump denied ever having been informed of such a practice.

As noted above, even "all risk" policies contain some exclusions. These exclusions are not uniform, but vary from company to company within the insurance industry. One such exclusion is for damage due to subsurface water. Slightly more than half of available insurance policies contain this exclusion, but some companies whose policies contain the exclusion will write over it for an additional premium. Although Crump was unaware that some policies did not contain the exclusion, it did know that some companies would write over it.

Newberg obtained the bid for a construction contract in Miami, Florida, which required it to construct concrete and masonry tanks for a sewage treatment plant. The tanks were to be built underground and, it turns out, under the water table. The construction was to be done "in the dry," i.e., the builder was required to use pumps and other equipment to "dewater" the construc-

**2.** As the district court astutely noted, the caption of the case lists Crump as a Delaware corporation while the "Agreed Statement of Uncontested Facts" indicates that Crump is a Tennessee corporation. However, as the district court also noted, diversity would exist in either event. In an appropriate case, however, such an inconsistency could make a difference to the court's jurisdiction. We urge litigants to be more cautious.

tion site so that subsurface water would not impede construction.

As was its usual practice, Newberg solicited bids from a number of insurance brokers, including Crump, for the builder's risk insurance on the project. It sent Crump the insurance specifications for the project, which called for "specified peril" coverage and did not specify subsurface water as one of the perils. Additionally, Newberg told Crump that the site was approximately two miles from the ocean and that flood coverage was not needed. Among the insurance brokers, Crump was the low bidder and provided Newberg with an "all risk" policy. However, subsurface water was among the perils excluded, under section 4(o) of the policy, which provided:

> 4. PERILS EXCLUDED. This policy does not insure:
>
> \* \* \* \* \* \*
>
> (o) Loss or damage directly or indirectly caused by or resulting from water below surface of ground; tidal water; tidal wave or tsunami, all whether or not driven by wind.

Crump did not inform Newberg of the exclusion; Newberg did not read the policy, and thus was unaware of the exclusion. As events came to pass, the project was damaged by subsurface water;[3] the loss was uninsured; and Newberg sued Crump alleging that Crump negligently procured a policy that did not insure against the risk and negligently failed to inform Newberg of the exclusion.

Both Newberg's and Crump's experts testified that an insurance broker should inform his customer of the differing exclusions in "all risk" policies if an "all risk" policy is requested. However, Newberg's expert, relying on the contract specifications, stated that "in this case we are not dealing with a situation like that."

After a bench trial, the District Court entered its findings of fact and conclusions of law and entered judgment for Crump, holding that Crump had no duty to inform Newberg of the policy exclusions. The district court noted that Crump was not Newberg's exclusive insurance broker and that Newberg had not requested "peril analysis," informed Crump of the peril of subsurface water, or requested insurance for that risk.

## II

We pause briefly to consider the standard of review that governs our inquiry. Although Crump attempts to characterize virtually all of the District Court's opinion as "findings," the key holding, that Crump had no duty to inform Newberg of the exclusions in the policy, quite clearly decides a question of law. *See* Restatement (Second) of Torts § 328B(b), (c) (1965). Thus our review of this question is not governed by the "clearly erroneous" standard of Rule 52.

However, the trial court's finding that Newberg never asked Crump for insurance against "all perils" is a finding of fact, subject to the clearly erroneous standard. The finding is not clearly erroneous. Newberg's employees testified that they specifically told Crump that all "builder's risk" was to be of the "all risk" variety. Crump's employees testified that no such instructions were given. This conflicting testimony presented a choice to the district court, the result of which "can virtually never be clear error." *Anderson v. City of Bessemer City*, 470 U.S. 564, 575, 105 S.Ct. 1504, 1513, 84 L.Ed.2d 518 (1985); *Hayden v. Oak Terrace Apartments*, 808 F.2d 1269, 1271 (7th Cir.1987); *Landau & Cleary, Ltd. v. Hribar Trucking, Inc.*, 807 F.2d 91, 93–94 (7th Cir.1986).

## III

We agree with the district court that Crump had no duty to inform Newberg of the exclusion of subsurface water damage.

---

**3.** The damage apparently occurred when Newberg employees turned off pumps used to dewater the site on a Friday and a partially constructed tank was damaged by subsurface water over the weekend. Crump thus asserted contrib- utory negligence (or comparative negligence, depending on the outcome of the choice of law inquiry) as an affirmative defense. Given its disposition of the case, the district court found it unnecessary to reach this issue, as do we.

Newberg was in a far better position to know the insurance coverage it needed. If it desired coverage beyond that specified in the contract documents that it sent to Crump, it should have said so. Newberg clearly either was or should have been aware of the risk of damage due to subsurface water. It was familiar both with the construction site and with the contractual provisions calling for construction "in the dry" and for "dewatering." Crump, on the other hand, had no knowledge of either.

Newberg seems to suggest that a broker must discuss each exclusion in an "all risk" policy with the insured. Yet it cites no case for this novel proposition, and we have found none. The very nature of an "all risk" policy dictates that a major portion of the policy terms will be exclusions. In the instant case, for example, the exclusion section is easily the longest portion of the policy with no fewer than fifteen different exclusions (and probably more, since many of the separately lettered exclusions, like the one in this case, actually exclude more than one type of loss). An insurance broker is under no duty to detail every term of every policy he offers to his customer, particularly where the policy plainly covers *all* of the risks for which the customer specifically requested coverage. The primary duty of the insurance broker is to provide insurance as agreed. *See Monogram Products, Inc. v. Berkowitz*, 392 So.2d 1353, 1355 (Fla.App. 2d Dist.1981). In performing this duty, a broker is entitled to assume that the insured has provided him with correct information regarding the coverage that is desired.

The authorities cited by Newberg do not support the duty that it asserts that Crump owed it. Perhaps the strongest case in support of Newberg's position is *Burns v.*

*Consolidated American Insurance Co.*, 359 So.2d 1203 (Fla.App. 3d Dist.1978). In *Burns* the court held that summary judgment for the insurance broker was inappropriate where the insured had sought insurance coverage for a house that was under construction, requesting coverage for "all perils." *Id.* at 1205, 1206. Nonetheless, the broker obtained a standard policy that specifically excluded loss from theft in a house under construction. Although the broker had been specifically informed by the insurance company to notify the insured of the exclusion, he did not do so. *Id.* at 1207. The court held that the request of insurance covering "all perils" raised a genuine issue whether the precise coverage excluded under the policy had been requested by the insured. *Id.* If such coverage had indeed been requested, the broker would have violated that most basic duty to the insured, to procure coverage as requested. Here, by contrast, the district court specifically found that Newberg did not request insurance against "all perils" and, as we have noted, that finding is not clearly erroneous. Nor can Newberg otherwise make a colorable assertion that it requested the precise coverage—against damage from subsurface water—that the policy excluded.[4]

Another salient fact distinguishes *Burns* from the instant case. In *Burns*, the broker knew that the insurance coverage was requested for a house that was under construction. Thus, it was well aware that the very risk excluded by the policy was likely to occur. Under these circumstances, it is scarcely surprising that the court held that the broker had a duty to inform the insured of the exclusion.[5]

---

**4.** In fact the only specific comment Newberg made to Crump was that the site was two miles from the ocean and that flood insurance was not required. If anything, this comment may have led Crump to believe that subsurface water coverage was similarly unnecessary.

**5.** The district court specifically found that Crump did not know, and could not have known that subsurface water was a particular peril of the job in question. In light of the fact that Crump was not even given the full contract

specifications (which, as counsel noted below, comprise a document roughly the size of a telephone directory of a major city), which mentioned the builder's obligation to dewater the site, much less asked Crump to analyze them to determine appropriate coverage, we cannot say that these findings were clearly erroneous. As the district court noted, the mere fact that the job was to take place in the Miami area was insufficient to put Crump on notice of the risk of subsurface water damage.

Likewise, in *Woodham v. Moore*, 428 So.2d 280 (Fla.App. 4th Dist.1983), the court held that an insurance broker had a duty to inform his clients that they had become eligible for greater coverage under an automobile collision and liability policy. Although they had earlier carried such higher coverage, the clients had been forced to obtain "assigned risk" coverage at lower limits because of a record of accidents. They later became once again eligible for greater coverage, but their insurance agent, who had a policy of periodically reviewing client files to monitor precisely such developments, neglected to inform them of this fact. We agree with the district court that *Woodham* addressed a situation where the agent "failed to provide accurate information regarding available insurance which the defendants knew or clearly should have known plaintiffs desired." Slip op. at 21. We also agree that such is not the situation in this case.

*Seascape of Hickory Point Condominium Association, Inc., Phase III v. Associated Insurance Services, Inc.*, 443 So.2d 488 (Fla.App. 2d Dist.1984) is likewise distinguishable from the present case. There the court held that misleading statements by an insurance broker to the effect that seawall insurance was not available were actionable. The court's reasoning in a nutshell was that:

> Each of the cases discussed above [referring to numerous cases from other jurisdictions recognizing a duty to advise the insured of the availability of coverage, many of which have been cited by the parties to this appeal in this court and in the district court] recognized that there can be circumstances under which an insurance broker has a duty to volunteer advice to his client. If this be so, would not a broker under equivalent circumstances have a greater duty to render correct advice when it was given?

443 So.2d at 490.

In other words, the court plainly viewed giving *incorrect* advice to be more likely to be actionable than giving *no* advice. Such

a rule comports with principles of liability elsewhere in the law of negligence. For example, a passerby typically has no duty to offer assistance to another who is in peril, but if he undertakes to do so, he must discharge that undertaking with reasonable care. Restatement (Second) of Torts, §§ 314, 323, 324; *see also Padgett v. School Board of Escambia County*, 395 So.2d 584 (Fla.App. 1st Dist.1981). Although that rule has been roundly criticized in both its aspects (i.e., first that there is ordinarily no duty, and second that if a "good samaritan" acts even though not legally obligated to do so his reward, in this world at least, may be an action for damages), it remains the law unless changed by statute. *See* W. Page Keeton et al., *Prosser and Keeton on Torts* § 56, pp. 375–79 (5th ed. 1984). Here, however, the record is devoid of any evidence that Crump undertook to advise Newberg on the insurance needed for the construction job. On the contrary, Newberg told Crump what it needed and Crump, like several other insurance brokers, attempted to be the low bidder.

Additionally, in *Seascape* the plaintiff had for the past four years "purchased all of its insurance through [the defendant] and ha[d] relied on the [defendant] and its agents to provide insurance planning advice." *Id.* at 489. It had specifically sought insurance to cover its seawall in the event of storm damage on several occasions. On each, it had been informed that such coverage was not available. *Id.* Such a situation is not presented here. Newberg neither relied on Crump to provide insurance planning advice (indeed, as the district court held, Newberg did not even provide Crump with the necessary information to provide such advice) nor requested the coverage that was excluded. We would be presented with a quite different case had Newberg told Crump to be sure that the coverage included damage from subsurface water and Crump responded that such coverage could not be had.[6]

---

6. Had Newberg done so, it is quite likely that Crump would have obtained the appropriate coverage. Newberg argues that Crump's ignorance that some policies did not contain the

Nor do the other cases cited by Newberg provide support for the duty it claims that Crump owed it. *Monogram Products, Inc. v. Berkowitz*, 392 So.2d 1353 (Fla.App. 2d Dist.1980) involved a simple failure by the broker to obtain insurance as agreed, a duty that is not controversial and, as we have noted, is not involved in this case. In *Monogram Products*, the broker had been requested to obtain insurance on the contents of a warehouse which, due to fluctuations in inventory, would vary considerably over time. He was requested to obtain "flexible coverage." Instead, he obtained a policy with an upper limit of $100,000 in spite of the plaintiff's telling him that that would be insufficient in light of the fluctuations. The broker then *assured* the plaintiff that if it submitted monthly inventory reports showing the value of the contents of the warehouse, the policy would automatically cover amounts exceeding $100,-000 when inventory reports exceeding that amount were submitted, and that appropriate premiums could be calculated at year's end. Such a situation is a far cry from this case.

*Neida's Boutique, Inc. v. Gabor & Co.*, 348 So.2d 1196 (Fla.App. 3d Dist.1977) is actually contrary to Newberg's position. In that case the court affirmed the dismissal of a complaint seeking damages for the alleged negligent failure to procure an increase in the coverage under the policy. The court noted:

> The amended complaint did not state a cause of action against either appellee in that, among other things, the complaint did not allege an agreement between the parties to secure a policy of insurance nor did said complaint specify the terms and conditions of the allegedly requested

additional insurance.... The allegations show only a request by appellant for additional insurance which falls short of a contract to obtain or supply such insurance.

*Id.* at 1197 (citations omitted).

### IV

In sum, Newberg's position requires, at the very least, a substantial expansion of Florida law.[7] A federal court sitting in diversity is particularly ill suited to such a task. *See Afram Export Corp. v. Metallurgiki Halyps, S.A.*, 772 F.2d 1358, 1370 (7th Cir.1985); *cf. Grubb v. W.A. Foote Memorial Hospital, Inc.*, 741 F.2d 1486, 1500 (6th Cir.1984) (Respect for state courts as the primary expositors of state law counsels restraint by federal court in announcing new state law principles, a factor appropriately considered by the district court in declining, in its discretion to hear a pendent state law claim.), *vacated on other grounds*, 759 F.2d 546 (6th Cir. 1985), *cert. denied*, — U.S. ——, 106 S.Ct. 342, 88 L.Ed.2d 289 (1985). We believe that the district court correctly perceived and applied Florida law under the existing relevant precedents, and that none of its factual findings were "clearly erroneous." Accordingly, the judgment of the district court is

AFFIRMED.

---

exclusion was a violation of its duty to be aware of the terms of the available policies. However, Crump *was* aware of a functionally equivalent means of covering the same risk, i.e., that some companies would write an endorsement over the exclusion for an additional premium. Newberg's argument rests on a distinction without a difference and is thus wholly unpersuasive.

7. Given the unchallenged holding that Florida law governs this case, the authorities from other jurisdictions cited and argued by the parties, *e.g., Sobotor v. Prudential Property & Casualty*

Insurance Co., 491 A.2d 737 (N.J.Super.Ct.App. Div.1984); *Darner Motor Sales v. Universal Underwriters*, 140 Ariz. 383, 682 P.2d 388 (Ariz. 1984); *Nowell v. Dawn Leavitt Agency, Inc.*, 127 Ariz. 48, 617 P.2d 1164 (Ariz.Ct.App.1980); *Hardt v. Brink*, 192 F.Supp. 879 (W.D.Wash. 1961), are only indirectly relevant. Nonetheless, the district court carefully considered those cases in a thorough and thoughtful opinion. We could add little to his careful analysis of those cases.