**Cynthia GILARDI, Plaintiff–Appellee,**

v.

**Gary SCHROEDER, d/b/a Gary Schroeder Trucking, Defendant–Appellant.**

Nos. 86–2728, 86–2870.

United States Court of Appeals, Seventh Circuit.

Argued May 22, 1987.

Decided Nov. 3, 1987.

As Corrected Nov. 4, 1987.

---

Ronald H. Balson, Law Offices of Ronald H. Balson, P.C., Chicago, Ill., for defendant-appellant.

Ellen G. Robinson, Chicago, Ill., for plaintiff-appellee.

Before BAUER, Chief Judge, and CUMMINGS and MANION, Circuit Judges.

CUMMINGS, Circuit Judge.

Defendant Gary Schroeder appeals from the district court's holding that he violated plaintiff Cynthia Gilardi's rights under Title VII, 42 U.S.C. § 2000e–2(a), when he discharged her from her position with his trucking firm, 672 F.Supp. 1043. Schroeder also appeals from the court's finding that he committed the torts of civil battery and intentional infliction of emotional distress when he had non-consensual sexual intercourse with the plaintiff. Schroeder only challenges the court's ruling on liability and does not argue that the damage award of $112,960.50 plus $49,516.00 in attorney's fees and costs is excessive. We affirm.

I.

After conducting a bench trial, Judge Marshall entered his findings of fact pursuant to Federal Rule of Civil Procedure 52(a). We can set those findings aside only if, after giving due regard to the trial court's opportunity to assess the credibility

of the witnesses, we conclude that the court's findings are clearly erroneous. Fed.R.Civ.P. 52(a); *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518; *Hadi v. Horn*, 830 F.2d 779, 784 (7th Cir.1987). Much of defendant Schroeder's appeal is devoted to challenging the factual findings of the district court. Specifically, Schroeder objects to Judge Marshall's conclusion that Gilardi's testimony was credible while Schroeder's testimony was not credible because he "was such a manipulative, selective and impeached witness." Credibility determinations, of course, are for the district court to make and will be overturned on appeal only if there are extraordinary circumstances. See *Gust K. Newberg Construction Co. v. E.H. Crump & Co.*, 818 F.2d 1363, 1365 (7th Cir.1987). Those circumstances are not present. Far from being clearly erroneous, Judge Marshall's factual findings are fully supported by the record. His findings, which are detailed in a thoughtful and thorough opinion, form the factual record for this appeal.

In 1980 Cynthia Gilardi and her husband Leonard began working for Gary Schroeder as a team of cross-country truck drivers. Cynthia and Leonard separated in July 1981, and Cynthia became unemployed and homeless because she had been living in the truck that she and her husband had used to transport goods across the country. Schroeder, whose wife was in Arizona visiting a friend, invited Cynthia Gilardi to stay at his home where Schroeder's brother-in-law, Edward St. Clair, was also staying. Because she was homeless, Gilardi accepted the invitation. When Schroeder's wife returned from Arizona, Gilardi and St. Clair moved into a mobile home that was available to St. Clair. Because Gilardi was unemployed, she accepted an offer from Schroeder to work at his office preparing items such as expense vouchers.

Schroeder was not an employer who avoided sexual topics in the workplace. To the contrary, he once boasted to an employee that he would have sexual intercourse with any woman. The notepads that he used to instruct female employees were "illustrated" with a sketch of a man and a woman engaged in intercourse. He spoke to his female employees about sexual intercourse and group sex. He also patted female employees on the buttocks and asked them if they were wearing brassieres.

When Gilardi began working for Schroeder, he showed an especially keen interest in her. He repeatedly brought up sexual topics, made comments about her breasts, patted her on the buttocks, and on one occasion put his hand between her thighs. She rebuffed him, telling him that she did not want to engage in sexual activity with her employer. She testified credibly at trial that although she did not leave her job, it was only because at the time she had no economic choice.

During late summer 1981, Schroeder and his wife, Carol, socialized with Gilardi and Patti and Walter Gwara, who were husband and wife drivers for Schroeder. At the insistence of either Patti Gwara or Gary Schroeder, they discussed sexual topics from *Forum* magazine. On one occasion, at Schroeder's insistence, the group played strip poker in which everyone except Schroeder disrobed.

On Saturday, September 12, 1981, the Schroeders invited Gilardi to accompany them to an open house and a party. After the party, the three returned by automobile to the mobile home where Cynthia was living. They sat outside and talked. The three of them then went to the Schroeder home and talked for a short time in the living room. Carol Schroeder went to bed leaving Gilardi and Gary Schroeder in the living room. Schroeder gave Gilardi three Quaaludes, which she swallowed. She passed out. While Gilardi was in a stupor, Schroeder had sexual intercourse with her and performed cunnilingus on her. He took Gilardi upstairs and placed her in bed with himself and his wife. As Judge Marshall pointed out, there was absolutely no evidence that Gilardi consented to, encouraged or provoked Schroeder's conduct. In short, Schroeder raped Gilardi. See Ill. Rev.Stat. ch. 38, § 12–13.

When Carol Schroeder woke up, she was understandably upset. She screamed at

her husband, pummeled him, and continued berating him. Gilardi remained unconscious until noon, oblivious to the encounter between Carol and Gary. When Gilardi regained consciousness, Schroeder drove her home. Later that day, Schroeder spoke with St. Clair and told him what had occurred, adding that it had happened just as he had planned it.

Schroeder's wife insisted that he fire Gilardi. When Gilardi arrived at work the following day, Carol spoke to her by phone and told her that she was fired. Apparently at his wife's insistence, Schroeder soon thereafter fired Gilardi.

Following the rape, Gilardi experienced a period of despondency that included a suicide attempt. In July 1982, she obtained a position as a civilian employee of the Department of the Army. She has been successful in her position and has progressed through four salary grades. The record also indicates that she is now well-adjusted emotionally.

In January 1982, Gilardi visited the Equal Employment Opportunity Commission ("EEOC"), complained of sexual harassment by Gary Schroeder, and filed an Intake Questionnaire detailing the harassment. She filed a formal charge dated March 1, 1982. The formal charge contains the EEOC stamp "received" with a date of March 31, 1982. It is unclear whether the formal charge was filed before March 31, 1982, and not stamped until that date. On May 10, 1983, the EEOC issued a right to sue letter to Gilardi. On July 27, 1983, she submitted a *pro se* complaint along with a summons and a petition to proceed *in forma pauperis* to the Clerk of the District Court for the Northern District of Illinois. A deputy clerk returned the documents to her informing her that the documents would not be accepted until she submitted two more copies of the complaint, included her right to sue letter, put the title of the case on her motion for appointment of counsel, and had her *in forma pauperis* petition notarized. Gilardi filed the requested documents on August 17, 1983, 99 days after receiving her right to sue letter.

Judge Marshall appointed counsel who filed an amended complaint alleging a Title VII violation as well as pendent counts for civil battery and intentional infliction of emotional distress. Schroeder moved to dismiss the Title VII claim, alleging that it was time-barred because Gilardi had filed her discrimination charge with the EEOC on March 31, 1982, more than 180 days after the last act of discrimination had occurred in mid–September 1981. Gilardi opposed the motion contending: (1) the charge had been filed on March 1, 1982, well within the 180–day limit, (2) in any event the Intake Questionnaire, which was filed in January 1982, constituted a charge for purposes of the statute, and (3) because Illinois is a "deferral" state, Gilardi's filing with the EEOC was well within the 300–day limitation period applicable to deferral state residents. In his motion to dismiss, Schroeder also contended that Gilardi had failed to file a complaint within 90 days of receiving her right to sue letter as required by 42 U.S.C. § 2000e–5(f)(1). The district court rejected Schroeder's arguments for two reasons. First, it held that because the Intake Questionnaire was a charge within the meaning of the statute, the EEOC filing requirement had been met. Second, it deemed July 27, 1983, as the date on which Gilardi's complaint had been filed for purposes of fulfilling the 90–day filing, reasoning that the deputy clerk had acted improperly in returning the complaint to Gilardi.

## II.

### 1. Timely Filing with EEOC

 Section 706(e) of Title VII, 42 U.S.C. § 2000e–5(e), provides that a charge of unlawful employment practices generally must be filed with the EEOC within 180 days of the alleged discriminatory act as a prerequisite to filing a suit under Title VII. *Wislocki–Goin v. Mears,* 831 F.2d 1374, 1378–79 (7th Cir.1987); *E.E.O.C. v. Tempel Steel Co.,* 814 F.2d 482, 484 (7th Cir.1987). The Ninth Circuit has held that an Intake Questionnaire, which is filled out by all complainants who visit an EEOC office, constitutes a charge for purposes of fulfill-

ing the statutory requirement. See *Casavantes v. California State University*, 732 F.2d 1441 (9th Cir.1984). *Casavantes* has been criticized as being inconsistent with the express language of the statute which requires that a charge "shall be in writing under oath or affirmation." See *Proffit v. Keycom Electronic Publishing*, 625 F.Supp. 400, 403 (N.D.Ill.1985) (Shadur, J.). Because Intake Questionnaires are ordinarily not made under oath, Schroeder argues in this Court that the *Proffit* analysis is correct and that the questionnaires do not constitute charges for purposes of fulfilling the EEOC filing requirement. *Id.* We need not decide which position is correct, however, because there is an alternative ground argued by Gilardi, Brief at 28–29, upon which we can affirm the judgment of the district court. See *Maguire v. Marquette University*, 814 F.2d 1213, 1216 (7th Cir.1987).

The 180–day EEOC filing period applies "except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice, ... such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e). Illinois has an agency authorized to grant relief from unlawful employment practices, see Ill.Rev. Stat. ch. 68, § 7–101, and 29 C.F.R. § 1601.80, and therefore it is considered a "deferral" state whose residents are not required to file with the EEOC until 300 days after the act of discrimination so long as they meet the statutory prerequisite for the extended filing period. *Lorance v. AT & T Technologies, Inc.*, 827 F.2d 163, 165 n. 2 (7th Cir.1987). The statutory prerequisite requires the complainant to institute proceedings initially with the state agency. 42 U.S.C. § 2000e–5(e). Because EEOC regulations require it to refer all charges filed with the EEOC to the appropriate state agency, 29 C.F.R. § 1601.13, the statutory prerequisite is met when the EEOC files the charges with the state agency on the complainant's behalf. This procedure

was specifically approved by the Supreme Court in *Love v. Pullman Co.*, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972), in which the Court stated that "nothing in the Act suggests that the state proceedings may not be initiated by the EEOC acting on behalf of the complainant himself." *Id.* at 525, 92 S.Ct. at 618. Moreover, the Court also approved the EEOC's practice of holding a complaint in "suspended animation" during the pendency of state proceedings and then automatically filing the charge with the EEOC upon termination of the state proceedings. *Id.* at 526, 92 S.Ct. at 618. The Court commented that "[t]o require a second 'filing' by the aggrieved party after termination of state proceedings would serve no purpose other than the creation of an additional procedural technicality." *Id.*

Therefore Gilardi did all that she needed to do to obtain the benefit of the 300–day filing period since the charge that was filed with the EEOC was referred to the appropriate state agency and then acted upon by the EEOC after the state agency had completed its proceedings. All of this occurred within 300 days of the discriminatory act. In contrast to its treatment of nondeferral state residents, the statute by its terms does not impose upon deferral state residents a requirement that they institute a proceeding with an administrative agency within 180 days. Rather, the statute allows those deferral state residents to obtain the benefit of the 300–day requirement so long as "the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice...." Because of the express language of the statute which omits a 180–day filing requirement for deferral state residents, five circuits have rejected the argument that the 300–day filing period is not available to complainants in deferral states who do not file a charge with the state agency or the EEOC (which refers the charge to the state agency) within 180 days. See *EEOC v. Shamrock Optical Co.*, 788 F.2d 491, 493–494 (8th Cir.1986); *Thomas v. Florida Power & Light Co.*, 764 F.2d 768, 771 (11th

Cir.1985); *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1211 (3d Cir. 1984); *Smith v. Oral Roberts Evangelistic Ass'n*, 731 F.2d 684, 687–90 (10th Cir. 1984); *Jones v. Airco Carbide Chemical Co.*, 691 F.2d 1200, 1201–04 (6th Cir. 1982). We agree with the reasoning of the courts in those cases.

In interpreting "virtually identical statutory provisions" of the Age Discrimination in Employment Act ("ADEA") in *Anderson v. Illinois Tool Works, Inc.*, 753 F.2d 622, 626 (7th Cir.1985), we held that a charge need not be filed with the state agency within 180 days in order to receive the benefit of the 300–day filing period. See also *Smith v. General Scanning, Inc.*, 832 F.2d 96, 98 (7th Cir.1987). Other circuits concur in this Court's interpretation of the ADEA. See *Aronsen v. Crown Zellerbach*, 662 F.2d 584 (9th Cir.1981), certiorari denied, 459 U.S. 1200, 103 S.Ct. 1183, 75 L.Ed.2d 431; *Goodman v. Heublein, Inc.*, 645 F.2d 127 (2d Cir.1981). As the Eleventh Circuit pointed out in *Thomas*, the virtual identity of these provisions of the ADEA and Title VII make a compelling case for applying the reasoning of *Anderson* to Title VII. *Thomas*, 764 F.2d at 771 (citing *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 755–56, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979)). This Court itself has noted that "the parallel is indeed close." *Martinez v. United Automobile Workers*, 772 F.2d 348, 351 (7th Cir.1985). In light of the well-reasoned precedent both in this and other circuits, we conclude that the 300–day filing period under Title VII is available to deferral state residents who file complaints with state agencies more than 180 days after the alleged discrimination.

In so holding, we recognize, as did the Eighth Circuit in *Shamrock*, that such a rule allows a complainant in some instances to ignore state remedies without penalty despite some evidence in other provisions of Title VII that indicate a policy of deferral to state agencies, see *Martinez*, 772 F.2d at 351 (noting that unlike ADEA complainants, Title VII complainants cannot file with the EEOC until 60 days after filing with the state agency unless the state completes its proceedings at an earlier point), and also results in a more favorable rule for deferral state complainants than for those individuals in nondeferral states. 788 F.2d at 493; see also *Martinez*, 772 F.2d at 350. However, as the Eighth Circuit also pointed out, "the fact that section 706(e) tolerates disregard of state procedures and allows some complainants more time than others cannot justify our finding a requirement in a statute, enacted by Congress, which neither the Supreme Court nor this circuit nor any other circuit has recognized." 788 F.2d at 493–94. In addition, as we stated in *Anderson* when applying the same rule under the ADEA, " 'there is something to be said for trying to achieve uniformity even if the rule adopted may seem less than optimal.' " *Anderson*, 753 F.2d at 628 (quoting *Ciccone v. Textron, Inc.*, 651 F.2d 1, 2 (1st Cir.1981) (*per curiam*), certiorari denied, 452 U.S. 917, 101 S.Ct. 3052, 69 L.Ed.2d 420).

It should be noted that two days after the Eighth Circuit decided *Shamrock*, the Fourth Circuit decided *Dixon v. Westinghouse Electric Corporation*, 787 F.2d 943 (1986), petition for certiorari filed, No. 86–181 (July 9, 1986). Without citing *Shamrock*, *Thomas*, *Howze*, *Oral Roberts*, *Airco*, or an appellate or district court opinion from any other court, the Fourth Circuit held that the plaintiff there, who had filed an EEOC charge 230 days after her termination, "could not take advantage of the extended 300–day period" because she had not "initially instituted" proceedings with the appropriate state agency. *Id.* at 945–46. Although the court apparently declined to rule on whether a deferral-state complainant must file charges within 180 days, some of the analysis in the opinion, which is not entirely clear, seems to indicate that the court would adopt such a rule. See *Borowski v. Vitro Corp.*, 634 F.Supp. 252, 256 (D.Md.1986) (discussing *Dixon*). A subsequent case, which expressly reaffirms *Dixon*, supports the conclusion that the court would, if it has not already, adopt the position that a deferral-state plaintiff must file with the state agency within 180

days of the alleged discrimination. *E.E. O.C. v. Ocean City Police Department*, 820 F.2d 1378, 1383 (4th Cir.1987) (*en banc*). Whether or not the Fourth Circuit will actually adopt such a rule, we must note that the rule that it may have adopted is an anomaly and appears to conflict with controlling Supreme Court precedent. In *Dixon* the court stated that the EEOC's transmittal of the plaintiff's charge to the state agency "was for informational purposes only and did not constitute an 'initially instituted' charge within the meaning of the statute." *Id.* at 946. The court did not cite *Love v. Pullman Co.*, 404 U.S. 522, 92 S.Ct. 616, and its opinion in *Dixon* appears to conflict with the Supreme Court's analysis in that case and may also conflict with the views of other circuits as discussed *supra.* If the court's reasoning is consistent with *Love v. Pullman*, then the rationale underlying the court's decision is probably an assumption that deferral-state residents must file with the state agency within 180 days if the state statute so provides in order to have "initially instituted" state proceedings. In any event, to the extent that *Dixon* may be interpreted as inconsistent with our decision today, we decline to follow it.

The argument for imposing a 180-day filing requirement is partially based upon the Title VII policy of deferring to state administrative remedies for at least 60 days. See *Martinez*, 772 F.2d at 350–51. The force of this argument has been substantially undercut by actions of the administrative agencies involved. The EEOC has entered into numerous "worksharing agreement[s] with state or local agencies." *Tempel*, 814 F.2d at 483 n. 2; see also 29 C.F.R. § 1601.13(c). These worksharing agreements, which are entered into "[i]n order to avoid duplication of effort," *id.*, provide, at least in the case of the EEOC agreement with the appropriate Illinois agency, that the "EEOC would assume primary responsibility for processing all charges originally received by the EEOC" and that the Illinois agency "would waive its exclusive right under section 706(c) to initially process those charges." *Id.* In Gilardi's case, the Illinois agency received

the complaint on April 1, 1982, and on that same day returned it to the EEOC, waiving its right to process the charge pursuant to the worksharing agreement. Because worksharing agreements have to a great extent eliminated the policy of deferral to state agencies embodied in section 706(c), the policy argument for imposing a 180-day filing requirement that is not part of 42 U.S.C. § 2000e–5(e) has been substantially weakened.

This Court is also bound to give substantial weight to the EEOC's interpretation of the statute that it administers. See *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 843–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694; *Duggan v. Board of Education*, 818 F.2d 1291 (7th Cir.1987). Consistent with the position of the five circuits that have explicitly decided this issue, the EEOC concludes in its regulations that a deferral-state resident need not file with either the state agency or the EEOC within 180 days of the discriminatory act. 29 C.F.R. § 1601.13(a)(3). To the extent that there might be an argument for imposing a 180-day filing requirement, this situation is a classic case for relying on the EEOC's interpretation of the statute. *Chevron*, 467 U.S. at 843, 104 S.Ct. at 2782 ("if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute"). Moreover, as the Eleventh Circuit has correctly stated, when there are "no underlying ideological principles involved, the courts should not unnecessarily conflict on the application of regulatory laws such as the one at issue here." *Thomas*, 764 F.2d at 770. Following the EEOC's interpretation avoids unnecessary conflict and is consistent with the Supreme Court's mandate that courts must give substantial weight to administrative interpretations. We conclude that whatever policy arguments support the imposition of a 180-day filing requirement on deferral-state residents, those arguments cannot justify an attempt to rewrite the language of section 706(e). See also *Sere v. Board of Trustees of Universi-*

*ty of Illinois,* 628 F.Supp. 1543, 1545 (N.D. Ill.1986). We therefore hold that Gilardi made a timely filing with the EEOC.

### 2. Timely Filing with District Court

■ Title VII also requires a plaintiff to file suit in federal court within 90 days of receiving a right to sue letter from the EEOC. 42 U.S.C. § 2000e–5(f)(1). Gilardi received her right to sue letter on May 10, 1983, and therefore needed to file a complaint by August 8, 1983. Judge Marshall concluded that the district court clerk acted improperly in rejecting Gilardi's complaint when it was filed on July 27, 1983. He reasoned that the complaint was adequate to comply with rules of the District Court for the Northern District of Illinois. Local Rule 11(b) provides that any "complaint in a civil action presented for filing without prepayment of the prescribed fees that is accompanied by a petition for leave to file *in forma pauperis* ... shall be accepted by the clerk." Furthermore, the local rules also provide that when a petition to proceed *in forma pauperis* is granted, the complaint shall be deemed filed as of the date the leave is granted, unless the court's order otherwise directs. Judge Marshall "otherwise directed" and ordered that the complaint should be considered filed as of July 27, 1983, well within the 90–day period. Judge Marshall's reasoning is sound.

Moreover, even if the district court had improperly interpreted its own rules, we would still be required to hold that the complaint was timely filed. If the plaintiff has filed a complaint in compliance with the statute and the Federal Rules of Civil Procedure, it should be deemed "filed" for statute of limitations purposes. See *Sentry Corp. v. Harris,* 802 F.2d 229 (7th Cir.1986). As the Ninth Circuit has pointed out, "the district court should regard as 'filed' a complaint which arrives in the custody of the clerk within the statutory period but fails to conform with formal requirements in local rules." *Loya v. Desert Sands Unified School District,* 721 F.2d 279, 281 (9th Cir.1983); see also *Cinton v. Union Pacific Railroad,* 813 F.2d 917, 920–21 (9th Cir.1987). Because the complaint was filed on July 27, 1983, well with-in the 90–day limitations period, the filing requirement of 42 U.S.C. § 2000e–5(f)(1) has been met.

### 3. Sexual Discrimination Under Title VII

■ The district court correctly concluded that Gilardi was entitled to recover under Title VII. When an employer rapes his employee and then, at the insistence of his wife, discharges the employee as a result, it is obvious that the discharged employee was discriminated against "because of such individual's ... sex." 42 U.S.C. § 2000e–2(a)(1). In this case, the district court found that:

> Gary Schroeder's sexual activity with Cynthia Gilardi was the *sole* cause of Cynthia Gilardi being terminated as an employee of Gary Schroeder. Schroeder's wife's insistence that Cynthia be terminated is understandable. But that insistence was provoked by Gary's sexual activity with Cynthia and his placing her in bed with himself and his wife.

*Gilardi v. Schroeder,* 672 F.Supp. 1043, 1046 (N.D.Ill.1986) (emphasis added). These findings were fully supported by the record. *Hagge v. Bauer,* 827 F.2d 101, 109 (7th Cir.1987).

In brief, the Supreme Court has held that a plaintiff can have a cause of action under Title VII if sexual advances by an employer are "unwelcome" even though the employee may have engaged in sexual conduct with the employer "voluntarily." *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 2406, 91 L.Ed.2d 49 (1986). Because Gilardi did not even engage in sexual relations voluntarily, there is no question that she has a claim for sexual discrimination. Schroeder does not seriously contest this proposition of law. Rather, he attempts to avoid liability by mischaracterizing the facts. However, as was noted above, the record fully supports Judge Marshall's findings of fact. Gilardi has shown that Schroeder violated Title VII.

### 4. State Law Claims

■ The district court also awarded damages under pendent state law claims

for battery and intentional infliction of emotional distress. The sole argument raised by Schroeder to challenge the district court's finding on both of these counts is his claim that the findings of fact mischaracterize the evidence. Because, as noted, the findings are not clearly erroneous, we affirm the district court's judgment on both pendent state law claims.

### III.

Judge Marshall stated that if this had been a criminal case, the evidence would have persuaded him beyond a reasonable doubt that Schroeder raped Gilardi. We agree with Judge Marshall's observation that Schroeder's conduct was totally reprehensible and also agree that the damage award was fully justified by the facts and note that, if anything, the award was too modest. Despite his reprehensible character, we have given Schroeder the review to which he is entitled, see *United States v. Wolf*, 787 F.2d 1094, 1097 (7th Cir.1986), but conclude that his legal arguments are without merit and accordingly affirm the judgment of the district court.

MANION, Circuit Judge, dissenting in part.

I would vacate the district court's judgment on the Title VII count, but affirm on the state law counts.

### I.

Under 42 U.S.C. § 2000e–5(e), a charge must be filed with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred." Illinois, however, is a deferral state. This means that there exists a state agency, the IDHR, authorized to adjudicate discrimination complaints. In a deferral state, a charge must be filed with the state agency, but once filed, the complainant has up to 300 days from the act complained of to file with the EEOC. 42 U.S.C. § 2000e–5(e). The EEOC may not process a charge until sixty days after the state has received the filing (unless the state agency completes its work earlier). 42 U.S.C. § 2000e–5(c).

Defendant Gary Schroeder raped plaintiff Cynthia Gilardi on Saturday, September 12, 1981. At his wife Carol's insistence, he fired Gilardi on Wednesday or Thursday, September 16 or 17, 1981. Gilardi filed her charge with the EEOC on March 31, 1982, approximately 195 days after Schroeder fired her. Upon receiving her charge, the EEOC promptly referred it to the IDHR. But under Illinois law, Gilardi's charge *had* to be filed with the IDHR—directly or through the EEOC—within 180 days of her discharge. Ill.Rev. Stat. ch. 68, para. 7–102(A)(1).

Because Gilardi's charge was not filed with the IDHR within 180 days, in my view she may not invoke the extended 300–day limitation period which arises when a charge is filed in a "deferral" state. While this circuit has not reached this precise question before, see *Martinez v. United Auto., Aerospace & Agr. Implement Workers*, 772 F.2d 348, 352 (7th Cir.1985) ("in a state that has an administrative statute of limitations shorter than 180 days, a timely filing is not required to preserve one's federal rights"), other circuits the majority cites allow the extension in spite of a late state filing.[1] But several cases from district courts in this circuit have properly enforced the 180–day limitations period. *See, e.g., Cody v. Southwest Forest Indus.*, 42 F.E.P. 1632, 1634 (N.D.Ill. 1987) [Available on WESTLAW, DCT database] (collecting cases). I am persuaded in particular by Judge Getzendanner's opinion in *Lowell v. Glidden–Durkee, Div. of SCM Corp.*, 529 F.Supp. 17 (N.D.Ill.1981) and Judge Shadur's in *Proffit v. Keycom Electronic Pub.*, 625 F.Supp. 400 (N.D.Ill.1985), which offer compelling reasons to disallow a claim not timely filed with the IDHR.

In *Anderson v. Illinois Tool Works, Inc.*, 753 F.2d 622, 626 (7th Cir.1985), we held that under the the ADEA, a state charge's timeliness is "irrelevant." But as *Martinez* cogently points out, significant differences exist between the ADEA and Title VII. See *Martinez*, 772 F.2d at 351.

---

1. One of the circuits listed, the Sixth, while finding itself "bound" by its earlier decisions, recently cited favorably the reasoning of *Martinez* and questioned its earlier holding. *Maurya v. Peabody Coal Co.*, 823 F.2d 933, 935 (6th Cir.1987).

For whatever reasons, the ADEA in 29 U.S.C. § 633(b) allows federal and state charges to be filed simultaneously. Title VII, in contrast, prohibits a claimant in a deferral state from prosecuting an EEOC charge until 60 days after state agency proceedings begin (unless the state terminates its proceedings earlier).

Here the IHDR could not consider the charge the EEOC filed on Gilardi's behalf because more than 180 days had elapsed from the date of her firing. Neither the employer nor the employee could have benefitted from a favorable state agency finding on the merits. To allow a late filing with the state by the EEOC to "satisfy" the deferral requirement undermines a statute intended to "give state agencies an opportunity to redress the evil at which the federal legislation was aimed, and to avoid federal intervention unless its need was demonstrated." *Mohasco Corp. v. Silver*, 447 U.S. 807, 821, 100 S.Ct. 2486, 2495, 65 L.Ed.2d 532 (1980).

No statutory ambiguity requires turning to administrative interpretation or judicial construction. The statute is clear. § 2000e–5(e) extends the 180–day limitations period only to one who files with a state "agency with authority to grant or seek relief." By definition, when a claim is untimely filed with a state agency, the state has no authority to grant relief, at least in a state like Illinois where timely filing is a jurisdictional limitation, *Pickering v. Illinois Human Rights Comm'n*, 146 Ill.App.3d 340, 99 Ill.Dec. 885, 496 N.E. 2d 746, 751 (1986). *See Proffit*, 625 F.Supp. at 407, *citing O'Young v. Hobart Corp.*, 579 F.Supp. 418, 421 (N.D.Ill.1983).

Filing a timely charge with the EEOC is not jurisdictional and is subject to equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982). Remanding the Title VII portion of this case to afford Gilardi the opportunity to show any basis for equitable tolling—assuming *arguendo* that her failure to exhaust state remedies

is not fatal, *see Cody*, 42 F.E.P. at 1634–35 —would be appropriate.[2]

## II.

Gilardi's state law claims for battery and intentional infliction of emotional distress, which arose from the same "nucleus of operative facts" as her Title VII claim, were properly within the district court's (and this court's) discretionary pendent jurisdiction. The district court's fact findings on the state law claims were not clearly erroneous, and it correctly applied Illinois law. Thus, the amount awarded solely on the Title VII cause of action—$47,500 in statutory attorney's fees—should be vacated. The remaining amount of $114,972.15, comprised of $12,960.50 in lost wages (which equals the amount also awarded as back pay under the Title VII count), $50,- 000 for psychic injury, and $50,000 in punitive damages, plus $2,011.65 in costs, should be upheld.

---

**2.** I assume for purposes of this dissent that Gilardi—whose discharge was proximately caused by Schroeder's wife's demand that Gilardi be fired—could otherwise prevail on the merits of her Title VII claim. *But see Bohen v. City*

*of East Chicago, Ind.*, 799 F.2d 1180, 1184 (7th Cir.1986); *DeCintio v. Westchester County Medical Center*, 807 F.2d 304, 308 (2d Cir.1986), *cert. denied*, —— U.S. ——, 108 S.Ct. 89, 98 L.Ed.2d 50 (1987).